JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Scott Jackson

**(b)** County of Residence of First Listed Plaintiff: St. Clair
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Linnell & Associates, PLLC
Richard Linnell (P59339) 2804 Orchard Lake Rd, Ste 203, Keego Harbor, MI 48320
(248) 977-4182

## DEFENDANTS

Columbus Township, et al.

County of Residence of First Listed Defendant: ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [X] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
Violation of 42 USC 1983

Brief description of cause:
civil rights action arising from defendant's campaign of enforcement against a barn in which township entered property illegally.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** over $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: November 3, 2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

# PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?

☐ Yes
☒ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☐ Yes
☒ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

Notes :

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SCOTT JACKSON,

Plaintiff,

v.

COLUMBUS TOWNSHIP,
a Michigan municipal corporation;
ROLAND SUESS, in his individual capacity; and ROBERT OSTERMAN, in his individual capacity,

Defendants.

Case No. ____________________

Hon. ________________________

Magistrate Judge ______________

Richard D. Linnell (P59339)
David H. Applebaum (P78794)
LINNELL & ASSOCIATES
Attorneys for Plaintiff
2804 Orchard Lake Road, Suite 203
Keego Harbor, Michigan 48320
(248) 977-4182
dapplebaum@linnellfirm.com

**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND DAMAGES UNDER 42 U.S.C. § 1983 AND MICHIGAN LAW (DUE PROCESS, UNCONSTITUTIONAL TRESPASS AND ENTRY, RETALIATION, EQUAL PROTECTION, AND TRESPASS) AND DEMAND FOR JURY TRIAL**

Plaintiff Scott Jackson, through his attorneys, Linnell & Associates, states as follows for his Complaint against Defendants Columbus Township, Roland Suess, and Robert Osterman:

## INTRODUCTION

1. This is a civil-rights action under 42 U.S.C. § 1983 arising from Columbus Township's campaign of enforcement against an agricultural barn that Plaintiff is building on his own farmland. The Township's Building Official entered Plaintiff's property and the interior of the barn on three occasions in May 2026 without a warrant, without consent, and without any emergency. He measured the interior. The Township then used those measurements to issue an undated Stop Work Order that cites no ordinance, no statute, and no code section, that was issued without any prior notice or opportunity to be heard, and that advises Plaintiff of no right of appeal.

2. When Plaintiff objected, the Township escalated. Its Electrical Inspector and Building Official threatened to disconnect electrical service to the barn "without further notice" based on "concealed" wiring that could have been observed only from inside the building, and the Township caused DTE to halt the installation of electrical service to the barn. Plaintiff lost the 2026 growing season, and his construction has been stopped for months.

3. The Fourteenth Amendment forbids a State and its political subdivisions from depriving any person of property without due process of law, and it makes the Fourth Amendment's protection against unreasonable governmental intrusion into private buildings binding on the Township. Plaintiff seeks a

declaration that the Township's conduct is unconstitutional, an injunction ending it, and damages for the losses it has caused.

4. Plaintiff also sues the two officials who personally carried out that conduct; Building Official Roland Suess and Electrical Inspector Robert Osterman in their individual capacities. The rights they violated were clearly established long before 2026. Plaintiff seeks compensatory and punitive damages against each of them under 42 U.S.C. § 1983, and damages against Suess under Michigan law for his trespass.

## JURISDICTION AND VENUE

5. This action arises under the Constitution and laws of the United States, including the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

6. This Court has supplemental jurisdiction over Plaintiff's state-law claim under 28 U.S.C. § 1367(a) because it is so related to the federal claims that it forms part of the same case or controversy.

7. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, and injunctive relief under Federal Rule of Civil Procedure 65.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside in this District and all of the events and omissions

giving rise to Plaintiff's claims occurred in Columbus Township, St. Clair County, Michigan, which lies within the Eastern District of Michigan.

## PARTIES

9. Plaintiff Scott Jackson is a resident of Columbus Township, St. Clair County, Michigan. He owns approximately 160 contiguous acres in the Township, including the property commonly known as 2233 Bauman Road (the "Property") and an immediately adjoining parcel on which an existing single-family residence is located.

10. Defendant Columbus Township (the "Township") is a Michigan general law township and municipal corporation located in St. Clair County, Michigan. The Township is a "person" subject to suit under 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

11. Defendant Roland Suess ("Suess") is, and at all relevant times was, the Building Official of Columbus Township. At all relevant times he acted under color of state law. He is sued in his individual capacity.

12. Defendant Robert Osterman ("Osterman") is, and at all relevant times was, the Electrical Inspector of Columbus Township and a member of the Columbus Township Building Department. At all relevant times he acted under color of state law. He is sued in his individual capacity.

13. At all relevant times, the Township acted through its Township Board, its Building Department, Suess, and Osterman. Suess and Osterman are referred to together as the "Individual Defendants."

## FACTUAL ALLEGATIONS

### A. The Property and the Agricultural Barn

14. Plaintiff is constructing an agricultural barn on the Property measuring approximately 45 feet by 90 feet (the "Barn"). The Barn is located on Plaintiff's farmland, set back a substantial distance from Bauman Road behind a gate.

15. The Barn is an agricultural building. Before construction, Plaintiff executed and submitted to the Township a signed agricultural affidavit stating that the Barn would not be used for non-agricultural purposes. The Township accepted that affidavit and processed the Barn as an agricultural building.

16. The Township has admitted the Barn's agricultural status in writing. Its own Stop Work Order, discussed below, states: "Permits were for agricultural use," and describes the Barn as a structure "built for storage under an agricultural use."

17. Under Michigan's Stille-DeRossett-Hale Single State Construction Code Act, a building incidental to the use for agricultural purposes of the land on which it is located, and not used in the business of retail trade, is excluded from the Act's definitions of "building" and "structure" and does not require a building permit. *See* MCL 125.1502a; MCL 125.1510.

18. The Columbus Township Zoning Ordinance provides that "[a]ccessory building requirements shall not affect any working farms." Columbus Township Zoning Ordinance § 5.17.G.1.

19. Plaintiff has consistently informed the Township that he intends to build a single-family residence on the same parcel as the Barn. Plaintiff has had architectural plans prepared for that residence, including a floor plan and front elevation dated September 25, 2026.

**B. The Building Official's Shifting and Contradictory Demands**

20. Before and during construction of the Barn, Building Official Roland Suess imposed a series of shifting and contradictory demands on Plaintiff that are found in no ordinance or statute.

21. Suess asserted that the Barn must be located on the same parcel as an existing residence. On that basis, he demanded that the location of the Barn be moved approximately forty-five feet, causing delay and additional construction cost.

22. Suess further required Plaintiff to combine the parcel on which the Barn is located with the adjoining parcel containing the existing single-family residence. Plaintiff acquired and then combined the adjoining parcel to satisfy Suess's requirement, incurring survey costs, legal fees, Township and County combination fees, and Road Commission fees. The Township charged Plaintiff a recombination

fee for parcel numbers 16-028-4001-400, 16-028-4001-100, and 74-16-028-4001-001.

23. Suess did not inform Plaintiff that his stated concern could be satisfied by less burdensome means, such as an affidavit of Plaintiff's intent to build a residence on the Barn parcel or a recorded agreement linking the parcels.

24. Having required Plaintiff to combine the parcels so that the Barn would sit on the same parcel as a residence, the Township then took the position that two residences may not exist on a single parcel, and Plaintiff was told that the existing residence must now be split off from the combined parcel, the opposite of what the Township had just required. Plaintiff has incurred and continues to incur additional survey, split, and Road Commission fees as a result.

**C. The Warrantless Entries into the Barn**

25. On May 22, 2026, at approximately 1:00 p.m. and again at approximately 7:00 p.m., and on May 26, 2026, at approximately 8:00 a.m., Suess entered the Property and the interior of the Barn.

26. To reach the Barn, Suess walked past a gate and approximately 450 feet across Plaintiff's property.

27. Suess did not have a warrant. Plaintiff did not consent to any of the entries, and no one with authority to consent on Plaintiff's behalf did so. Upon

information and belief, Suess did not contact Plaintiff, present credentials, or request entry before entering the Barn.

28. No emergency or exigent circumstance existed. There was no fire, no collapse, and no immediate danger to life, limb, or property. The Township's subsequent enforcement documents identify no emergency.

29. While inside the Barn, Suess inspected the interior and measured interior spaces, including, upon information and belief, the Barn's upper level.

30. Michigan's own building code rules require a building official seeking entry to first locate the owner or occupant and request entry, and, if entry is refused, to "have recourse to the remedies provided by law to secure entry," including "a proper inspection warrant." Mich. Admin. Code R 408.30406. Suess did none of these things.

31. Upon information and belief, Suess later told the Township Board at a public meeting that he never went upstairs in the Barn. That statement cannot be reconciled with the two-floor interior measurements Suess placed in the Stop Work Order, described below.

32. On August 18, 2026, Plaintiff reported the entries to the St. Clair County Sheriff's Office, which documented the report as Case Report CR No. 260034272. A copy is attached as **Exhibit E**.

## D. The Stop Work Order

33. Following the entries, Suess issued, on behalf of the Township and on Township letterhead, a document addressed to Plaintiff "concerning the structure built at 2233 Bauman Rd" (the "Stop Work Order"). A copy is attached as **Exhibit A**.

34. The Stop Work Order is undated. It states that "a Stop Work Order is in effect on your property due to construction of structure outside of original intended use."

35. The Stop Work Order relies on the interior measurements Suess obtained during the warrantless entries. It states: "Living quarters constructed approximately 24'x88'; approximately 2100SqFt x 2 Floors would equal over ~4000SqFt without drawings or inspections."

36. The Stop Work Order admits that "[n]o inspections have been made by the building department at this time other than for storage building under agricultural use." The interior dimensions it recites therefore were not obtained through any lawful inspection; they were obtained through the warrantless entries.

37. The Stop Work Order does not identify any ordinance, statute, code section, or rule that Plaintiff allegedly violated. Its only reference to a legal standard is the statement that "[p]er Township Ordinances, 2 living quarters are not allowed on the same property with only one address."

38. The Stop Work Order is internally contradictory. It admits that "[p]ermits were for agricultural use," yet asserts that "there has not been a building permit applied for or requested under agriculture right to farm." It faults Plaintiff because "[n]o application for agriculture plans or for future growth of crops on acreage [was] submitted," although, upon information and belief, no ordinance or statute requires any such application.

39. The Stop Work Order states that "[n]o Zoning requirements have been met at this time" without identifying any zoning requirement, and that "[n]o Certificate of Occupancy will be issued for building so long as violations persist" without identifying any violation.

40. The Barn does not contain living quarters. Its interior is unfinished, and it is being constructed and will be used for agricultural purposes.

41. Before the Stop Work Order was posted or issued, the Township did not give Plaintiff written notice of any alleged violation or an opportunity to appear and show cause why construction should not be stopped. Michigan law requires such notice and a full working day to show cause before a stop construction order may issue. MCL 125.1512(3).

42. The Stop Work Order does not advise Plaintiff of any right to a hearing or any right to appeal to a construction board of appeals or any other body, including the appeal available under MCL 125.1514.

43. The Stop Work Order remains in effect. It has halted construction of the Barn, required Plaintiff's contractors to demobilize and remobilize, and prevented Plaintiff from using the Barn for its agricultural purpose.

**E. The Disconnection Notice and Interference with Electrical Service**

44. On August 17, 2026, Electrical Inspector Robert Osterman and Building Official Roland Suess issued, on Township letterhead, a "Dangerous Condition Notice / Impending Disconnection" directed to Plaintiff concerning the Property (the "Disconnection Notice"). A copy is attached as **Exhibit B**.

45. The Disconnection Notice asserts that Plaintiff had failed "to rectify the unsafe conditions previously cited." No unsafe condition had previously been cited. The Stop Work Order identifies no unsafe condition of any kind.

46. The Disconnection Notice identifies as its "Reason for Condemnation of Installation" only "[u]nauthorized and uninspected electrical installations within the accessory structure" and "[c]oncealment of electrical installations within the accessory structure without required approvals or inspections."

47. By the Township's own description, the electrical installations were "within" the Barn and "concealed." They could not have been observed from the road, from any open field, or from any lawful vantage point. Upon information and belief, the Township's knowledge of them derives from the warrantless entries into the Barn.

48. The Disconnection Notice does not identify any specific dangerous condition, any code provision that was violated, or any fact showing a danger to human life or property. It cites only Mich. Admin. Code R 408.30810, which authorizes disconnection "[w]hen the use of electrical equipment or its installations is found to be dangerous to human life or property" and requires written notice of the causes.

49. The Disconnection Notice gave Plaintiff ten days to "establish an approved plan" and warned that, absent such a plan, "the electrical service to the accessory structure will be disconnected from the source of power without further notice." It does not advise Plaintiff of any right to a hearing or to appeal under MCL 125.1514, or of the stay that an appeal provides under MCL 125.1517.

50. Upon information and belief, Osterman personally contacted DTE Energy, with the knowledge and approval of Suess, and caused DTE to stop or terminate the installation of electrical service to the Barn, without any hearing and without any finding, by any neutral decisionmaker, that a dangerous condition existed.

51. Upon information and belief, Osterman and/or Suess stated, in reference to the interference with electrical service, that he was "just trying to get your attention."

52. Without electrical service, Plaintiff has been unable to complete the Barn, unable to use it for its agricultural purpose, and unable to plant crops. Plaintiff lost the 2026 growing season. The lack of power also impedes construction of Plaintiff's planned residence.

**F. The Township's Notice of, and Failure to Correct, the Violations**

53. Plaintiff served a written "Formal Constitutional Notice, Demand to Cease Enforcement, and Notice of Potential Liability" on the Township Board of Trustees, the Supervisor, the Clerk, the Treasurer, each Trustee, and Building Official Suess (the "Constitutional Notice"). A copy is attached as **Exhibit C**.

54. The Constitutional Notice informed the Township that Suess had entered the Barn without permission, inspected and measured its interior, and used those measurements in the Stop Work Order; expressly withheld consent to any further entry without a warrant or court order; demanded that the Township identify the specific ordinance, section, and statute Plaintiff allegedly violated, the evidence supporting the alleged violation, how that evidence was obtained, and Plaintiff's administrative appeal rights; and demanded preservation of evidence.

55. On September 21, 2026, Plaintiff's counsel sent a written demand to the Township's attorney, Paul B. Addis, identifying the defects in the Stop Work Order, the warrantless entry, and the interference with DTE's installation of electrical service, itemizing Plaintiff's resulting losses, and demanding, among other

things, that the Township notify DTE in writing to resume work and terminate the Stop Work Order. A copy is attached as **Exhibit D**.

56. The Township has not withdrawn the Stop Work Order. It has not identified any ordinance, statute, or code section that Plaintiff violated. It has not disclosed how it obtained the interior measurements. It has not notified DTE that it has no objection to the installation of electrical service. It has not provided Plaintiff with any hearing.

57. The Township Board is the final policymaker for the Township with respect to the enforcement actions at issue. Upon information and belief, following the May 5, 2026 recall election, the Board assumed direct control over matters previously administered by the Township Supervisor, including oversight of the Building Department's enforcement activities.

58. With actual knowledge of the warrantless entries, of the Stop Work Order's reliance on the interior measurements obtained through those entries, of the absence of any cited legal basis, notice, or hearing, and of Suess's statement to the Board that he never went upstairs, the Board took no action to withdraw or correct the Stop Work Order, to rescind the Disconnection Notice, to restore electrical service, or to prevent further enforcement based on the entries. The Board thereby approved and adopted the conduct of Suess and Osterman and the basis for it as the Township's own.

59. Independently, Suess, as the Township's Building Official, has final authority under state law and Township practice to decide whether, when, and how to inspect buildings and to issue stop work orders on the Township's behalf, and Osterman, as Electrical Inspector, is the "authority having jurisdiction" designated by the Township to decide whether to disconnect electrical service. Their decisions concerning the Property are not subject to review by any other Township official before taking effect.

60. Upon information and belief, the Township has no written policy requiring its building and electrical officials to obtain consent or an inspection warrant before entering private buildings, to give notice and an opportunity to show cause before issuing a stop work order, or to advise property owners of their appeal rights, and it does not train its officials on those requirements, despite the obvious and recurring need for such training in a department whose central function is the inspection of private buildings.

**G. The Individual Defendants' Escalation After Plaintiff Complained**

61. Plaintiff engaged in protected activity by objecting to the Individual Defendants' conduct and petitioning for redress, including by (a) reporting Suess's entries to the St. Clair County Sheriff's Office on August 18, 2026; (b) serving the Constitutional Notice on the Township Board and on Suess; and (c) through counsel,

demanding on September 21, 2026 that the Township withdraw the Stop Work Order, notify DTE to resume work, and compensate Plaintiff.

62. Suess was a named recipient of the Constitutional Notice and had actual knowledge of it. Upon information and belief, Suess and Osterman each knew of the police report and of the Constitutional Notice before Osterman contacted DTE.

63. After Plaintiff engaged in that protected activity, the Individual Defendants did not identify any law, provide any hearing, or withdraw the Stop Work Order. Instead, upon information and belief, they escalated: Osterman, with Suess's knowledge and approval, caused DTE to halt the installation of electrical service to the Barn, and an Individual Defendant explained that he was "just trying to get your attention."

64. Cutting off the power needed to farm and to build, during the growing season, would deter a person of ordinary firmness from continuing to object to government action or to report official misconduct to law enforcement.

**H. Suess's Differential Treatment of Plaintiff**

65. Upon information and belief, Suess has not required other owners of agricultural buildings in Columbus Township to relocate their buildings, to acquire and combine adjoining residential parcels, to submit an "application for agriculture plans or for future growth of crops on acreage," or to forgo electrical service pending such an application.

66. Plaintiff is similarly situated in all material respects to those owners: each submitted an agricultural affidavit or otherwise obtained Township acceptance of an agricultural building on agricultural land. There is no rational basis for treating Plaintiff differently. Upon information and belief, Suess singled Plaintiff out because of personal animus toward Plaintiff and his project, which intensified after Plaintiff challenged Suess's authority.

## I. Plaintiff's Damages

67. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including, without limitation: loss of the use of the Barn and the Property; lost profits from the 2026 growing season; contractor and electrician remobilization fees; equipment relocation charges; cold-weather concrete and heating costs caused by delay; additional dumpster, sanitation, and insurance costs during the work stoppage; survey and topographical survey costs; parcel combination, split, and Road Commission fees; the costs of electrical and gas service work rendered unusable; legal fees; and the invasion of his privacy and property rights. Plaintiff's itemized losses exceeded $75,000 as of September 21, 2026, and continue to accrue.

## COUNT I
## DEPRIVATION OF PROPERTY WITHOUT PROCEDURAL DUE PROCESS
## (Fourteenth Amendment – 42 U.S.C. § 1983)
## (Against All Defendants)

68. Plaintiff incorporates the preceding paragraphs as if fully restated here.

69. The Due Process Clause of the Fourteenth Amendment prohibits a State and its political subdivisions from depriving any person of property without due process of law. U.S. Const. amend. XIV, § 1.

70. Plaintiff has constitutionally protected property interests, created and defined by Michigan law, in (a) the ownership, possession, and use of the Property and the Barn; (b) the right to continue construction of an agricultural building that Michigan law exempts from permitting and that the Township accepted and permitted for agricultural use, and in which Plaintiff had substantially invested in reliance on that acceptance; and (c) the installation and receipt of electrical service to the Barn, which under Michigan law may be disconnected by the Township only upon a finding that an installation is dangerous to human life or property and upon written notice of the causes. Mich. Admin. Code R 408.30810.

71. Defendants deprived Plaintiff of those interests by issuing and maintaining the Stop Work Order, by issuing the Disconnection Notice, and by causing DTE to stop or terminate the installation of electrical service to the Barn.

72. Due process required, at a minimum, notice reasonably calculated to inform Plaintiff of the specific violation charged and its legal basis, a meaningful opportunity to be heard before the deprivation, and notice of the procedures available to contest it. *Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976); *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 13–15 (1978); *Flatford v. City of Monroe*, 17 F.3d 162, 167–70 (6th Cir. 1994).

73. The Township provided none of these protections. It issued the Stop Work Order without prior notice or the opportunity to show cause that Michigan law requires, MCL 125.1512(3); without identifying any ordinance, statute, or code provision allegedly violated; and without advising Plaintiff of any right to a hearing or appeal. It issued the Disconnection Notice without identifying any dangerous condition or violated code provision and without advising Plaintiff of any right to a hearing or appeal, and it then caused the electrical installation to be stopped without any hearing at all.

74. No emergency justified dispensing with pre-deprivation process. The Stop Work Order concerns the classification of the Barn's use, not any danger, and the Disconnection Notice itself allowed ten days to respond – conduct inconsistent with any claimed need for immediate action.

75. Under the balancing required by *Mathews*, Plaintiff's private interests in the use of his land, the completion of his Barn, and the continuation of his farming

operation are substantial; the risk of erroneous deprivation from enforcement orders that cite no law and rest on unverified, unlawfully obtained observations is high; and the burden on the Township of identifying the law it is enforcing, giving notice, and affording a hearing is minimal.

76. The deprivations were not random or unauthorized acts of rogue employees. They were carried out through the Township's established enforcement procedures by officials with final authority to act for the Township, and were approved and adopted by the Township Board with full knowledge. Pre-deprivation process was therefore both feasible and required. To the extent any post-deprivation remedy exists, it is inadequate, because the Township never informed Plaintiff of it and because no post-deprivation remedy can restore the lost growing season or the months of halted construction.

77. The Township is liable for these violations because they were caused by (a) the decisions of officials with final policymaking authority over the matters at issue, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986); (b) the Township Board's ratification of those decisions with knowledge of their basis, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); and (c) the Township's policy or custom of issuing enforcement orders without notice, hearing, or advice of appeal rights, and its deliberately indifferent failure to train its officials on those requirements, *City of Canton v. Harris*, 489 U.S. 378, 388–90 (1989).

78. The Township is not entitled to qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980).

79. Suess is individually liable because he personally issued and has maintained the Stop Work Order without prior notice, an opportunity to show cause, identification of any violated law, or notice of any right of appeal, and because he co-signed the Disconnection Notice and, upon information and belief, approved the halt of electrical service installation without a hearing.

80. Osterman is individually liable because he personally co-signed the Disconnection Notice, which identified no dangerous condition and no right of appeal, and, upon information and belief, personally caused DTE to halt installation of electrical service to the Barn without any hearing.

81. The Individual Defendants are not entitled to qualified immunity. Long before 2026, it was clearly established that officials may not deprive a person of property without notice and an opportunity to be heard absent a genuine emergency, and that a building official who deprives an owner of the use of property must at a minimum give prompt notice of the available procedures to contest the deprivation. *Mathews*, 424 U.S. at 333; *Memphis Light*, 436 U.S. at 13–15; *Flatford*, 17 F.3d at 170–71.

82. As a direct and proximate result of Defendants' violation of Plaintiff's right to procedural due process, Plaintiff has suffered the damages described above.

## COUNT II
## ARBITRARY AND CAPRICIOUS DEPRIVATION OF PROPERTY – SUBSTANTIVE DUE PROCESS
## (Fourteenth Amendment – 42 U.S.C. § 1983)
## (Against All Defendants)

83. Plaintiff incorporates the preceding paragraphs as if fully restated here.

84. The Due Process Clause of the Fourteenth Amendment protects property owners against arbitrary and capricious governmental action that deprives them of the use of their property without any rational basis. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217, 1220–23 (6th Cir. 1992).

85. This Count is based on the Township's land-use and enforcement decisions, not on the physical entries into the Barn, which are the subject of Count III.

86. Defendants' actions toward the Property bear no rational relationship to any legitimate governmental interest and are arbitrary and capricious, including:

a. requiring Plaintiff to move the Barn approximately forty-five feet and to acquire and combine the adjoining residential parcel so that the Barn would share a parcel with a residence, and then declaring that the combined parcel may not contain two residences and that the existing residence must be split off again;

b. stopping construction of a building that the Township itself admits was permitted for agricultural use, while simultaneously asserting that no permit was ever "applied for or requested";

c. faulting Plaintiff for failing to submit an "application for agriculture plans or for future growth of crops on acreage," a requirement that, upon information and belief, exists in no ordinance or statute;

d. declaring that the unfinished Barn contains "living quarters" without any inspection, drawing, or identified standard, and refusing to identify any ordinance or code section that Plaintiff violated;

e. enforcing an accessory-building chronology requirement, Columbus Township Zoning Ordinance § 5.17.E, against a working farm despite the Ordinance's own provision that "[a]ccessory building requirements shall not affect any working farms," § 5.17.G.1, and despite Plaintiff's ownership of the immediately adjoining residence; and

f. causing the halt of electrical service installation to the Barn without any identified dangerous condition, for the purpose, as a Township official put it, of "just trying to get your attention."

87. The Township has reached a final, definitive position as to the Property. The Stop Work Order remains in force, the Township has not complied with Plaintiff's written demands to identify its legal basis or withdraw it, and the

Township has declared that "nothing can be inspected or approved on this building." No further application or appeal would alter the Township's position, and any such effort would be futile.

88. The Township is liable for these violations for the reasons stated in Count I, which Plaintiff incorporates here.

89. Suess is individually liable because he personally made or directed each of the decisions described in subparagraphs (a) through (e) and, upon information and belief, approved the conduct described in subparagraph (f). Osterman is individually liable because he personally engaged in the conduct described in subparagraph (f).

90. As a direct and proximate result of Defendants' violation of Plaintiff's right to substantive due process, Plaintiff has suffered the damages described above.

**COUNT III**
**UNCONSTITUTIONAL TRESPASS AND WARRANTLESS ENTRY**
**(Fourth Amendment, as Incorporated Through the Fourteenth Amendment – 42 U.S.C. § 1983)**
**(Against Defendants Columbus Township and Suess)**

91. Plaintiff incorporates the preceding paragraphs as if fully restated here.

92. The Fourth Amendment's guarantee of "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" is enforceable against the Township through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

93. When government officials physically intrude upon a constitutionally protected area to gather information, a search occurs. *Florida v. Jardines*, 569 U.S. 1, 5–7, 11 (2013); *United States v. Jones*, 565 U.S. 400, 404–05 (2012).

94. A privately owned building, including a barn, outbuilding, or commercial structure, is protected against warrantless, nonconsensual governmental entry. *See v. City of Seattle*, 387 U.S. 541, 543 (1967); *Taylor v. United States*, 286 U.S. 1, 6 (1932).

95. Administrative and code-enforcement inspections are searches subject to the Fourth Amendment, and absent consent or an emergency they may not be conducted without a warrant. *Camara v. Municipal Court*, 387 U.S. 523, 528–34 (1967); *See*, 387 U.S. at 545; *Michigan v. Tyler*, 436 U.S. 499, 504–06 (1978).

96. On May 22, 2026, twice, and on May 26, 2026, the Township, through its Building Official, physically entered and trespassed into the interior of Plaintiff's Barn, without a warrant, without consent, and without exigent circumstances, for the purpose of gathering information to be used in enforcement against Plaintiff. Upon information and belief, the Township also gathered information concerning electrical installations that were concealed within the Barn, which could not be observed without entering the Barn and, upon information and belief, without removing or looking behind coverings.

97. Each entry was an unreasonable search in violation of the Fourth Amendment as applied to the Township through the Fourteenth Amendment. No statute, ordinance, or rule authorized the entries; Michigan's own building code rules required Suess to request entry and, if refused, obtain an inspection warrant. Mich. Admin. Code R 408.30406. The Barn is not part of any closely regulated industry, and no statutory or regulatory scheme can substitute for a warrant in these circumstances.

98. The Township then used the information obtained through the entries as the basis for the Stop Work Order and, upon information and belief, the Disconnection Notice, extending and compounding the injury caused by the entries.

99. The Township is liable for these violations because (a) the entries were made by the Township's Building Official exercising final authority, delegated by the Township, to decide whether, when, and how to inspect buildings in the Township; (b) the Township Board, with actual knowledge of the warrantless entries and the use of the information so obtained, ratified and adopted the entries by maintaining and continuing to enforce the Stop Work Order founded upon them; and (c) the Township maintains a policy or custom of conducting warrantless inspections of private buildings and has been deliberately indifferent to the obvious need to train its officials on the warrant requirement.

100. There is a real and immediate threat that the Township will enter the Barn again without a warrant. The Township continues to enforce the Stop Work Order founded on the prior entries, and it has not provided the written confirmation, demanded by Plaintiff on September 21, 2026, that its officials will not enter the Barn, including in connection with any future inspection of Plaintiff's planned residence on the same parcel.

101. Suess is individually liable because he personally made each of the warrantless entries into the Barn and personally used the information obtained to issue the Stop Work Order.

102. Suess is not entitled to qualified immunity. For nearly sixty years before the entries, it has been clearly established that a government official may not enter a private building, including a commercial or agricultural building, to conduct a code-enforcement inspection without consent, a warrant, or an emergency. *Camara*, 387 U.S. at 528–34; *See*, 387 U.S. at 543–45; *Tyler*, 436 U.S. at 504–06. Michigan's own rule, which required Suess to request entry and, if refused, obtain an inspection warrant, gave him specific notice of that obligation. Mich. Admin. Code R 408.30406.

103. As a direct and proximate result of the unconstitutional entries, Plaintiff has suffered the invasion of his privacy and property rights and the damages described above.

## COUNT IV
## FIRST AMENDMENT RETALIATION
## (42 U.S.C. § 1983)
## (Against Defendants Suess and Osterman)

104. Plaintiff incorporates the preceding paragraphs as if fully restated here.

105. The First Amendment, as incorporated against the States through the Fourteenth Amendment, protects the right to petition the government for redress of grievances, including by objecting to official action, sending demand letters, and reporting official misconduct to law enforcement.

106. A retaliation claim requires that (1) the plaintiff engaged in protected conduct; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing that conduct; and (3) the adverse action was motivated at least in part by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

107. Plaintiff engaged in protected conduct by reporting Suess's entries to the Sheriff's Office, serving the Constitutional Notice, and, through counsel, demanding that the Township withdraw its enforcement actions.

108. The Individual Defendants took adverse action against Plaintiff by causing DTE to halt installation of electrical service to the Barn and by continuing to maintain and enforce the Stop Work Order without identifying any legal basis.

109. Upon information and belief, that adverse action was motivated at least in part by Plaintiff's protected conduct, as shown by its timing after the protected

conduct, by the absence of any identified dangerous condition or legal basis, and by an Individual Defendant's statement that he was "just trying to get your attention."

110. The right to be free from retaliation by public officials for petitioning the government and reporting misconduct was clearly established long before 2026. The Individual Defendants are not entitled to qualified immunity.

111. As a direct and proximate result of the Individual Defendants' retaliation, Plaintiff has suffered the damages described above.

**COUNT V**
**EQUAL PROTECTION – CLASS OF ONE**
**(Fourteenth Amendment – 42 U.S.C. § 1983)**
**(Against Defendant Suess)**

112. Plaintiff incorporates the preceding paragraphs as if fully restated here.

113. The Equal Protection Clause of the Fourteenth Amendment prohibits a government official from intentionally treating a person differently from others similarly situated without any rational basis for the difference. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

114. Suess intentionally treated Plaintiff differently from other similarly situated owners of agricultural buildings in Columbus Township, as described above, by requiring him to relocate the Barn, to acquire and combine an adjoining residential parcel and then split it again, to submit an application that no ordinance or statute requires, and to stop construction of a building the Township had accepted as agricultural.

115. There is no rational basis for that differential treatment. Upon information and belief, it was motivated by animus and ill will toward Plaintiff.

116. The right to be free from intentional, irrational differential treatment by government officials was clearly established by *Olech* long before 2026. Suess is not entitled to qualified immunity.

117. As a direct and proximate result of Suess's violation of Plaintiff's right to equal protection, Plaintiff has suffered the damages described above.

**COUNT VI**
**TRESPASS**
**(Michigan Common Law)**
**(Against Defendant Suess)**

118. Plaintiff incorporates the preceding paragraphs as if fully restated here.

119. Plaintiff owned and was in possession of the Property and the Barn and had the exclusive right to their possession.

120. On May 22, 2026, twice, and on May 26, 2026, Suess intentionally and without authorization entered the Property and the interior of the Barn without Plaintiff's consent.

121. No statute, ordinance, rule, warrant, or court order authorized the entries. Michigan law required Suess to request entry and, if refused, to obtain an inspection warrant. Mich. Admin. Code R 408.30406.

122. Suess is not entitled to governmental immunity for this intentional tort. *Odom v. Wayne County*, 482 Mich. 459, 479–80 (2008). He did not act in good faith:

he entered three separate times, including in the evening, without any attempt to contact Plaintiff or request entry; he measured the interior of the Barn and used those measurements against Plaintiff; and, upon information and belief, he later told the Township Board that he never went upstairs, a statement inconsistent with the two-floor measurements in his own Stop Work Order. He acted with malice or reckless indifference to Plaintiff's rights, and his entries were ministerial acts that he performed in disregard of mandatory legal requirements.

123. As a direct and proximate result of Suess's trespass, Plaintiff suffered damages, including invasion of his possessory rights and the losses flowing from Suess's use of the information obtained through the trespass, and Plaintiff is entitled to at least nominal damages for each entry.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Scott Jackson respectfully requests that this Court enter judgment in his favor and against Defendants Columbus Township, Roland Suess, and Robert Osterman, and:

A. Declare that the warrantless entries into the Barn on May 22 and May 26, 2026 violated the Fourth and Fourteenth Amendments;

B. Declare that the Stop Work Order and the August 17, 2026 Disconnection Notice were issued and enforced in violation of the Due

Process Clause of the Fourteenth Amendment and are void and unenforceable;

C. Preliminarily and permanently enjoin the Township, its officers, agents, employees, and all persons acting in concert with them, from (i) enforcing the Stop Work Order or the Disconnection Notice; (ii) entering the Barn or any other building on Plaintiff's property without a valid warrant, Plaintiff's express consent, or a genuine emergency; (iii) using in any enforcement proceeding any measurement, observation, photograph, or other information obtained through the May 2026 entries; and (iv) interfering with the installation or provision of electrical service to the Barn;

D. Order the Township to notify DTE Energy in writing, within seven days, that the Township withdraws any objection to, or request to halt, the installation of electrical service to the Barn;

E. Award Plaintiff compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial, or, in the alternative, nominal damages;

F. Award Plaintiff punitive damages against Defendants Suess and Osterman, each individually, for their reckless and callous indifference

to Plaintiff's federally protected rights, *Smith v. Wade*, 461 U.S. 30, 56 (1983);

G. Award Plaintiff his reasonable attorney fees and costs under 42 U.S.C. § 1988;

H. Award pre-judgment and post-judgment interest as allowed by law; and

I. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

LINNELL & ASSOCIATES

/s/ Richard D. Linnell
Richard D. Linnell (P59339)
David H. Applebaum (P78794)
Attorneys for Plaintiff
2804 Orchard Lake Road, Suite 203
Keego Harbor, Michigan 48320
(248) 977-4182
dapplebaum@linnellfirm.com

Dated: November 3, 2026

## DEMAND FOR JURY TRIAL

Plaintiff Scott Jackson, through his attorneys, demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b) and E.D. Mich. LR 38.1.

Respectfully submitted,

LINNELL & ASSOCIATES

/s/ Richard D. Linnell
Richard D. Linnell (P59339)
David H. Applebaum (P78794)
Attorneys for Plaintiff
2804 Orchard Lake Road, Suite 203
Keego Harbor, Michigan 48320
(248) 977-4182
dapplebaum@linnellfirm.com

Dated: November 3, 2026

## VERIFICATION

I, Scott Jackson, declare under penalty of perjury under the laws of the United States of America that I am the Plaintiff in this action, that I have read the foregoing Complaint, and that the factual allegations in it are true and correct to the best of my knowledge, information, and belief. As to matters alleged upon information and belief, I believe them to be true. 28 U.S.C. § 1746.

Executed on 11/21, 2026.

Scott Jackson

# Exhibit A

**Columbus Township**
1732 Bauman Road
Columbus Twp. MI 48063
Phone: (586) 727-2055
Fax: (586) 727-9871

Supervisor- Brad Smith
Clerk- Angie Biringer
Treasurer- Valerie Kessler
Trustee- Stan Dudek Jr.
Trustee- Jared Greenia

To Scott Jackson concerning the structure built at 2233 Bauman Rd,

At this time, a Stop Work Order is in effect on your property due to construction of structure outside of original intended use.

1. Permits were for agricultural use.
2. No application for agriculture plans or for future growth of crops on acreage submitted.
3. According to signed agriculture affidavit submitted to Township, neither building or structure, nor any part of the same, would be used for non-agricultural purposes. Any construction or alterations that go outside agricultural use is thus in violation of agricultural exemption.
4. Per above-mentioned affidavit, owner agrees to vacate building, pay standard permit fees, dismantle structure to whatever is necessary if used for non-agricultural purposes for life of the building.
5. Per Township Ordinances, 2 living quarters are not allowed on the same property with only one address.
6. No inspections have been made by the building department at this time other than for storage building under agricultural use.
7. No Certificate of Occupancy will be issued for building so long as violations persist.

As it stands, this structure, built for storage under an agricultural use, does not meet requirements of AG Exemption. The building is approximately 45'x90'x16'. Living quarters constructed approximately 24'x88'; approximately 2100SqFt x 2 Floors would equal over ~4000SqFt without drawings or inspections.

At the present time, nothing can be inspected or approved on this building because there has not been a building permit applied for or requested under agriculture right to farm. Additionally, no permit may be issued for a living quarters on a lot with existing residential dwelling. No Zoning requirements have been met at this time, with Stop Work Order in force. Please notify the Township Office to rectify this problem immediately.

Roland Suess
Roland Suess
Columbus Township Building Official

# Exhibit B

**Columbus Township**
1732 Bauman Road
Columbus Twp. MI 48063
Phone: (586) 727-2055
Fax: (586) 727-9871

Supervisor- Brad Smith
Clerk- Angie Biringer
Treasurer- Valerie Kessler
Trustee- Stan Dudek Jr.
Trustee- Jared Greenia

**DATE:** August 17, 2026
**SENT VIA: CERTIFIED MAIL & REGULAR MAIL**
**ATTN:** Scott Jackson
**RE:** Dangerous Condition Notice / Impending Disconnection
**PROPERTY LOCATION:** 2233 Bauman Road, Columbus Twp, MI

Dear Mr. Jackson,

This formal notice serves to advise you that the Columbus Township Building Department has received no correspondence or action from you to rectify the unsafe conditions previously cited at the above-referenced property. This is in direct violation of the stop work order issued by the Building Department and the Building Official.

With public safety being our primary concern for life and property, Columbus Township must now take immediate action.

Pursuant to the **State of Michigan Part 8 Electrical Rules, Rule 810 (Section R408.30810), which adds Section 80.13(1) (Disconnection)** to the electrical service, the authority having jurisdiction is granted explicit power to disconnect dangerous equipment.

**Reason for Condemnation of Installation:**

- Unauthorized and uninspected electrical installations within the accessory structure.
- Concealment of electrical installations within the accessory structure without required approvals or inspections.

**Required Action:**

You are hereby given **ten (10) days** from the date of this notice to contact this office and establish an approved plan to rectify these violations.

**Failure to Comply:**

If you fail to contact the Columbus Township Building Department within ten (10) days, **the *electrical service to the accessory structure will be disconnected from the source of power without further notice*.**

*Please contact the Columbus Township Building Department immediately at* **(586) 727-2055** *to resolve this urgent matter.*

Sincerely,

**Robert Osterman**
Columbus Twp Electrical Inspector
Columbus Township Building Department

**Roland Suess**
Columbus Twp Building Official
Columbus Twp Building Dept

# Exhibit C

**CEASE AND DESIST**

**FORMAL CONSTITUTIONAL NOTICE, DEMAND TO CEASE ENFORCEMENT, AND NOTICE OF POTENTIAL LIABILITY**

To: Columbus Township Board of Trustees
Supervisor Brad Smith
Clerk Angie Biringer
Treasurer Valerie Kessler
Trustee Stan Dudek Jr.
Trustee Jared Greenia
Building Official Roland Suess

From: Scott Jackson

Property: 2233 Bauman Road and approximately 160 acres of contiguous property

Re: CEASE AND DESIST FROM UNLAWFUL ENTRY, UNCONSTITUTIONAL ENFORCEMENT, AND FURTHER UNAUTHORIZED INTERFERENCE WITH MY PROPERTY AND CONSTRUCTION

**COLUMBUS TOWNSHIP IS HEREBY DIRECTED TO CEASE AND DESIST.**

I am putting Columbus Township, the Township Board, the Building Department, and every official receiving this letter on formal notice that I am challenging the legality and constitutionality of the Township's actions concerning my property.

This is no longer an informal disagreement over a permit.

My constitutional rights and my private property rights are being directly implicated.

Your Building Official entered my private property without my permission.

He entered the interior of my barn without my permission.

He inspected the interior.

He measured rooms.

I have the entire incident captured on video.

I did not consent to his entry.

I did not consent to his inspection.

I did not consent to his measurements.

A police report has been filed concerning this entry, and the matter has been submitted for criminal-charge review.

The Township then issued me a Stop Work Order containing specific interior measurements and conclusions concerning the interior of my building.

I am formally challenging that conduct.

**CEASE AND DESIST FROM ENTERING MY PROPERTY WITHOUT LAWFUL AUTHORITY**

I am expressly notifying Columbus Township that no Township official, employee, inspector, contractor, agent, or representative has my permission to enter the interior of my buildings or any other constitutionally protected area of my property without:

My express permission

A valid warrant

A valid court order

A legally recognized exception to the warrant requirement

My consent is expressly withheld.

A zoning dispute does not suspend the Fourth Amendment.

A building dispute does not suspend the Fourth Amendment.

Being a Township employee does not suspend the Fourth Amendment.

In Camara v Municipal Court, 387 U.S. 523 (1967), the United States Supreme Court held that governmental administrative inspections are subject to the Fourth Amendment.

In See v City of Seattle, 387 U.S. 541 (1967), the Supreme Court likewise applied Fourth Amendment protections to governmental regulatory inspections.

Most importantly for Columbus Township, the Sixth Circuit recently decided Mockeridge v Harvey, 149 F.4th 826 (6th Cir. 2025).

That case involved Michigan local officials investigating building, housing, and zoning violations.

The officials entered private property without a warrant or consent to conduct their investigation.

The Sixth Circuit held that the search violated the Fourth Amendment and AFFIRMED THE DENIAL OF QUALIFIED IMMUNITY TO THE INDIVIDUAL OFFICIALS.

That is controlling federal appellate authority in Michigan.

I am now specifically putting every Township official receiving this letter on notice of that authority.

**MY CONTRACTORS AND WORK CREWS ARE NOT TO BE INTERRUPTED AGAIN WITHOUT LAWFUL AUTHORITY**

I am also demanding that Columbus Township cease interfering with my construction personnel except pursuant to identifiable lawful authority and constitutionally valid process.

I dispute the legal basis of the Stop Work Order.

I am demanding that the Township identify precisely what law authorizes it.

I will not accept another vague letter referring generally to "Township Ordinances." See Attached

If Columbus Township intends to interfere with my property or construction again, I expect the Township to identify:

The exact ordinance.

The exact section.

The exact statute.

The specific violation.

The factual basis for the violation.

The evidence supporting it.

The lawful manner in which that evidence was obtained.

The official responsible for the determination.

My administrative appeal rights.

The authority permitting the Township to stop construction.

**ANOTHER UNSUPPORTED ENFORCEMENT LETTER OR UNLAWFUL INTERRUPTION OF MY WORK WILL HAVE LEGAL CONSEQUENCES.**

If the Township again interferes with my construction without lawful authority after receiving this notice, I reserve the right to immediately seek judicial intervention without another courtesy notice.

That includes seeking a temporary restraining order, preliminary injunction, declaratory judgment, damages where authorized by law, attorney fees, and any other relief available to me under Michigan and federal law.

**YOUR LETTER DOES NOT IDENTIFY THE LAW**

Your Stop Work letter states:

"Per Township Ordinances, 2 living quarters are not allowed on the same property with only one address."

That is not good enough.

I am demanding that you tell me:

WHICH ORDINANCE?

WHICH SECTION?

WHICH DEFINITION?

WHICH ZONING PROVISION?

WHICH STATUTE?

WHAT LAW MAKES AN ADDRESS DETERMINATIVE?

WHAT LAW ESTABLISHES THAT MY UNFINISHED INTERIOR SPACE LEGALLY CONSTITUTES A SECOND DWELLING?

You do not get to interfere with my property rights by simply writing "per Township Ordinances."

Identify the law.

**EXPLAIN HOW YOU OBTAINED THE INTERIOR MEASUREMENTS**

Your letter contains specific information concerning the interior of my barn:

"Living quarters constructed approximately 24'x88'; approximately 2100SqFt x 2 Floors would equal over ~4000SqFt..."

I am demanding that Columbus Township disclose precisely how those measurements were obtained.

Your Building Official entered my barn without my permission and measured the interior.

That conduct is captured on video.

If the measurements appearing in your Stop Work Order came from that warrantless entry, then the Township is attempting to use information obtained during a constitutionally challenged governmental search as the basis for enforcement against me.

I am specifically challenging that evidence.

**I OWN APPROXIMATELY 160 ACRES**

I own approximately 160 acres.

I also own the immediately adjoining property.

That property already has a residence.

The properties physically join each other.

I own both.

Yet Columbus Township is apparently taking the position that the existing residence does not count because my barn happens to sit across a parcel boundary.

I constitutionally challenge that position.

I want the Township to answer this question:

**WHAT LEGITIMATE PUBLIC HEALTH, SAFETY, OR WELFARE INTEREST IS SERVED BY REQUIRING ME TO BUILD ANOTHER HOUSE BEFORE I CAN HAVE THIS BARN?**

I was required to merge my parcels prior to obtaining a permit to build in incurred substantial cost at Township officials direction.

If I move or eliminate the parcel boundary, what changes?

The barn does not move.

My house does not move.

My land does not move.

My neighbors do not change.

The road does not change.

The setbacks do not change.

The drainage does not change.

The fire risk does not change.

The structural integrity of the barn does not change.

My ownership does not change.

If changing paperwork suddenly makes the exact same barn acceptable, I want the Township to explain what legitimate public purpose the present restriction is actually serving.

**I AM FORMALLY CHALLENGING § 5.17.E**

Columbus Township Zoning Ordinance § 5.17.E states:

"No accessory building shall be erected prior to the construction of the main building ... unless approved by the Zoning Board of Appeals."

I am formally challenging this restriction as unconstitutional and unenforceable as applied to my property.

I understand that Columbus Township possesses zoning authority.

I also understand that this authority is not unlimited.

Article 1, §17 of the Michigan Constitution protects me against deprivation of my property without due process of law.

The Fourteenth Amendment to the United States Constitution protects me against arbitrary governmental deprivation of property.

In Kropf v City of Sterling Heights, 391 Mich. 139 (1974), the Michigan Supreme Court recognized constitutional limitations on zoning restrictions.

More importantly, in Delta Charter Township v Dinolfo, 419 Mich. 253 (1984), the Michigan Supreme Court INVALIDATED a township zoning restriction after finding that the classification lacked a rational relationship to the Township's stated objectives.

Columbus Township can regulate legitimate land-use impacts.

You can regulate lawful setbacks.

You can regulate drainage.

You can regulate height.

You can regulate fire safety.

You can regulate structural safety within your lawful authority.

You can regulate unlawful occupancy.

What you cannot do is impose an arbitrary restriction on my private property that lacks a rational relationship to a legitimate governmental purpose.

My barn does not become safer because I purchased the adjacent property with a residents in place.

Its setbacks do not change.

Its drainage does not change.

Its fire access does not change.

Its structural integrity does not change.

Its impact on neighboring property does not change.

Your ordinance regulates chronology.

I am demanding that Columbus Township explain why that chronology has a rational relationship to public health, safety, or welfare when applied to my approximately 160 acres and the adjoining residential property that I already own.

**AGRICULTURAL RIGHTS**

Your own letter acknowledges:

"Permits were for agricultural use."

You also acknowledge that I submitted an agricultural affidavit.

If my building and property constitute a qualifying farm or farm operation, Michigan's Right to Farm Act, MCL 286.471 et seq., and applicable GAAMPs must be addressed.

MCL 286.474 restricts local regulation that extends, revises, or conflicts with the Right to Farm Act or applicable GAAMPs, subject to the statute's requirements and exceptions.

A Columbus Township ordinance does not supersede Michigan law.

I expressly preserve every agricultural and Right to Farm protection available to me.

**42 U.S.C. §1983 AND PERSONAL LIABILITY**

I am putting every Township official receiving this letter on notice of 42 U.S.C. §1983.

Section 1983 provides a civil remedy when a person acting under color of state law causes the deprivation of a federal constitutional right.

Government officials can be sued individually when they personally participate in constitutional violations and the requirements for individual liability are established.

Qualified immunity is not absolute.

Mockeridge v Harvey is particularly important because the Sixth Circuit AFFIRMED THE DENIAL OF QUALIFIED IMMUNITY to Michigan local officials involved in an unconstitutional warrantless code-enforcement search.

Columbus Township itself can separately face municipal liability when an unconstitutional injury is caused by official municipal policy.

Monell v Department of Social Services, 436 U.S. 658 (1978).

Municipalities cannot claim qualified immunity from §1983 damages based upon good faith.

Owen v City of Independence, 445 U.S. 622 (1980).

I am now giving the Board and every official receiving this letter actual notice of my constitutional objections.

I understand that receipt of this letter does not automatically establish personal liability or automatically eliminate qualified immunity.

But after receiving this letter, nobody involved can credibly claim that Columbus Township was unaware of these constitutional objections or the controlling authority before deciding whether to continue the challenged conduct.

**THE ENTRY INTO MY BARN HAS BEEN REPORTED TO LAW ENFORCEMENT**

Michigan law specifically addresses unauthorized entry into buildings.

MCL 750.115 expressly includes unauthorized entry into a "barn," subject to the statute's elements and exceptions.

The entry into my barn has been reported.

I have video evidence.

I will allow law enforcement, prosecutors, and the courts to determine whether criminal charges are appropriate.

I expect Columbus Township to preserve every piece of evidence concerning the entry and not interfere with that process.

Federal law also prohibits certain willful deprivations of constitutional rights under color of law.

18 U.S.C. §242 requires proof of willfulness. Screws v United States, 325 U.S. 91 (1945).

I am not claiming that every zoning dispute constitutes a federal crime.

I am making it clear that governmental authority does not immunize anyone who willfully violates federally protected constitutional rights when the elements of federal law are established.

**PRESERVE EVERYTHING**

I am placing Columbus Township on formal notice to preserve every potentially relevant record concerning me, my property, my barn, and this enforcement action.

Preserve:

All emails.

All text messages.

All photographs.

All videos.

All measurements.

All drawings.

All inspection notes.

All permit records.

All Stop Work documentation.

All communications involving Roland Suess.

All communications concerning me.

All communications concerning 2233 Bauman Road.

All communications concerning my approximately 160 acres.

All communications concerning my adjoining property.

All communications with law enforcement.

All communications concerning my agricultural affidavit.

All communications concerning §5.17.E.

All ZBA communications.

All communications between Board members concerning this matter.

All records concerning prior accessory-building approvals, denials, exceptions, and enforcement.

This includes Township business conducted through personal phones, personal email accounts, or other electronic systems to the extent those records are legally subject to preservation.

Do not destroy anything.

Do not delete anything.

Do not overwrite anything.

Do not alter anything.

**THE ENTIRE BOARD IS NOW ON NOTICE**

After receiving this letter, the Board knows:

I am constitutionally challenging §5.17.E as applied to my property.

I dispute the Stop Work Order.

I dispute the Township's treatment of my adjoining residential property.

I dispute the Township's agricultural determination.

I challenge the Building Official's entry under the Fourth Amendment.

The entry is captured on video.

A police report has been filed.

The matter has been submitted for criminal-charge review.

I have identified controlling constitutional authority.

I have identified controlling Sixth Circuit authority involving warrantless Michigan code-enforcement searches.

I have identified potential civil-rights liability.

I have demanded preservation of evidence.

Nobody receiving this letter should later claim that these issues were unknown.

**FINAL CEASE AND DESIST DEMAND**

**I DEMAND THAT COLUMBUS TOWNSHIP CEASE AND DESIST FROM ANY FURTHER WARRANTLESS ENTRY INTO MY BUILDINGS OR OTHER CONSTITUTIONALLY PROTECTED AREAS OF MY PROPERTY.**

**I DEMAND THAT COLUMBUS TOWNSHIP IDENTIFY THE COMPLETE LEGAL BASIS FOR ITS STOP WORK ORDER.**

**I DEMAND THAT COLUMBUS TOWNSHIP IDENTIFY EVERY ORDINANCE AND STATUTE IT CLAIMS I HAVE VIOLATED.**

**I DEMAND THAT COLUMBUS TOWNSHIP EXPLAIN WHY THE EXISTING RESIDENCE ON MY IMMEDIATELY ADJOINING PROPERTY IS BEING DISREGARDED.**

**I DEMAND THAT COLUMBUS TOWNSHIP DISCLOSE EXACTLY HOW THE INTERIOR MEASUREMENTS IN ITS LETTER WERE OBTAINED.**

**I DEMAND THAT COLUMBUS TOWNSHIP PRESERVE ALL EVIDENCE.**

**I DEMAND THAT COLUMBUS TOWNSHIP REFRAIN FROM FURTHER INTERFERENCE WITH MY WORK CREWS EXCEPT PURSUANT TO IDENTIFIABLE LAWFUL AUTHORITY AND CONSTITUTIONALLY VALID PROCESS.**

**MY WORK CREWS WILL NOT BE SUBJECTED TO ANOTHER UNAUTHORIZED INTERRUPTION.**

If Columbus Township believes it possesses lawful authority to stop my construction, then identify that authority and follow the legally required process.

Another unsupported enforcement letter, another warrantless entry, or another interruption unsupported by lawful authority after receipt of this notice may result in immediate legal action without another courtesy notice.

I reserve the right to seek emergency injunctive relief, declaratory judgment, damages where legally available, individual-capacity relief where supported by law, municipal liability under 42 U.S.C. §1983, attorney fees under 42 U.S.C. §1988, and every other remedy available to me.

The Township does not obtain additional power because it sends me a letter.

The Township does not obtain additional power because its inspector entered my building.

The Township does not obtain additional power because I disagree with its interpretation.

Your authority comes from law.

Your authority is limited by law.

Your authority is limited by the Michigan Constitution.

Your authority is limited by the United States Constitution.

I expect Columbus Township to act accordingly.

**CEASE AND DESIST.**

Scott Jackson
2233 Bauman Road
Columbus Township, Michigan 48063

# Exhibit D

LINNELL & ASSOCIATES
Attorneys and Counselors

*ATTORNEYS*
RICHARD D. LINNELL
JAMES RANDALL WITHAM
DAVID H. APPLEBAUM
WANDA J. ROBERTS
DAKOTA M. OFFMAN
ELANA H. GLOETZNER
*OF COUNSEL*
HUNTER K. AVIS
PAUL G. SPANIOLO
MARIO B. AZZI
JACK K. WALLER

September 21, 2026

**VIA EMAIL AND FIRST CLASS MAIL**
info@theaddislawfirm.com
Mr. Paul B. Addis
The Addis Law Firm
Attorney at Law
18 First Street
Mt. Clemens, Michigan 48043

**Re: Scott Jackson**
**2233 Bauman Road, Columbus Township**

Dear Mr. Addis:

As you are aware, we represent Scott Jackson ("Client") as it relates to the Barn located at 2233 Bauman Road in Columbus Township ("Barn"). The Barn is for agricultural purposes as stated in the affidavit provided by my client to the Township. Various Township representatives have demonstrated hostility towards our Client based upon the misguided belief that the Barn is not for agricultural purposes. Our Client has advised of numerous transgressions committed by Columbus Township ("Township") regarding the Barn in a calculated effort to cause our client to incur unnecessary costs and delays, including but not limited to:

1. Issuing a stop work order that never should have been issued because our Client did nothing wrong with the project. Additionally, the stop work order did not specific a violation(s) or what needed to be corrected.
   a. The stop work order is undated;
   b. The stop work order claims that "no application for agricultural plans or for future growth of crops on acreage submitted;
      i. Does the Township require an "application[s] for agricultural plans"?
      ii. Does the Township require an "application…for future growth of crops on acreage"?

   This open-ended language without any details demonstrates that Roland Suess has an agenda with respect to my client and his property that is clearly outside the bounds of his position with the Township and the authority vested in the Township as it relates to the Barn and my client's property;

c. The stop work order implies that the Barn contains "construction or alterations that go outside agricultural use is thus a violation of the agricultural exemption. The Township fails to cite any claimed example of any violation(s). This open-ended language without any details demonstrates that Roland Suess has an agenda with respect to my client and his property that is clearly outside the bounds of his position with the Township and the authority vested in the Township as it relates to the Barn and my client's property;
d. The stop work order threatens consequences without providing any substantive allegations let alone any support for any substantive allegations. This is a form of harassment that appears to be systemic when coupled with the actions of other Township officials;
e. "Per Township Ordinances, 2 living quarters are not allowed on the same property for only one address". This comment is confounding and confusing because my clients have always advised the Township that they intend to build a single-family home on the same parcel as the Barn is being constructed upon. Yet Roland Suess demanded that my client combine the parcel that the Barn is located upon with the adjacent property containing an existing single-family Barn. In fact, the sole reason my clients purchased the parcel with the existing single-family home was to satisfy the erroneous information/requirements as stated by Roland Suess. My client would have built the Barn and then a single-family home and never purchased an adjacent parcel and never combined that adjacent parcel with the parcel that the Barn is located upon if given a choice. To add insult to injury, my clients now need to split the existing single-family home from the combined parcel because the Township zoning ordinance does not permit two single family homes on the same parcel. The intentional actions of Roland Suess and the Township have caused my client to incur numerous expenses including but not limited to surveying costs, split and combinations fees and additional construction costs.
f. "No Certificate of Occupancy will be issued for building so long as violations persist.". Note that there are no violations identified and/or sections of code cited. The Township's failure to cite any violation including the applicable code makes compliance impossible;
g. The stop work order claims that the Barn is "45'x90'x16'" and that the Barn contains living quarters" measuring "24'x88'". The stop work order provides no basis for the unsupported conclusions espoused in the stop work order, most notably the basis for making a claim that "living quarters" are contained in the Barn;
h. The stop work order goes on to state "At the present time, nothing can be inspected or approved on this building because there has not been a building permit applied for or requested under the agriculture right to farm. Additionally, no permit may be issued for a living quarters on a lot with an existing residential dwelling. No Zoning requirements have been met at this time, with Stop Work Order in force. Please notify the Township Office to rectify this problem immediately." This language is at best ambiguous and at worst intentional as it appears that the Township is demanding that my clients obtain a permit under the agricultural right to farm [Act]. No permit may be issued for a living quarters is irrelevant as the Barn does not contain living quarters and will be used for agricultural purposes. It is unclear what "Zoning requirements" must be met.

i. See attached stop work order;

2. Inspector Roland Suess illegally entered the Client's property and the Barn (see attached police report);

3. The Township contacted DTE to terminate the installation of service at the Barn for no reason. This resulted in our Client not having the power necessary to plant crops, thereby missing the 2026 growing season. The power is also necessary for the construction of the Client's new residence and the completion of the Barn;

4. Roland Suess demanded that the Client's Barn be moved forty-five feet (45') which caused delays and increased costs. The requirement to move the Barn was based on an erroneous claim that the Barn must be on the same parcel as an existing residence. An affidavit from my Client stating that he was going to build a home on the parcel that the Barn is being built upon or a recorded agreement to link the parcels that the existing home is located upon and the parcel that the Barn is being built upon would have satisfied Roland Suess's concern and eliminated this demand. However, Roland Suess did not offer these solutions and instead demand that the proposed Barn location be altered; and

5. My Client was required to combine parcels due to the Barn only to then be told that the existing house must be split off to avoid having two houses on one parcel, resulting in delay and unnecessary surveying fees.

This correspondence serves as a demand for reimbursement to our Client, due to the interference by Roland Suess, Robert Osterman and other Township officials related to the Barn and my client's adjacent parcels. The following is a breakdown of the demanded reimbursement amount:

| | |
|---|---|
| 1. Richard Osterman, Electrician – Remobilization Fee | $1,500.00 |
| 2. Recombination Fee charged by Township (parcel #16-028-4001-400, parcel #16-028-4001-100 and parcel #74-16-028-4001-001) | $375.00 |
| 3. Winter Concrete Charges – Orchard Constructio | 2,893.75 |
| 3. Outhouse cost during work stoppage ($140/month for 4 months) | $560.00 |
| 5. Dumpster – additional monthly rental fees due to delays caused by the Township ($150/month for 4 months) | $600.00 |
| 6. The JCB Teleskid was required to be moved two times at a cost of $700.00 per trip | $1,400.00 |
| 7. The scissor lifts were requested to be moved three times at $500.00 each | $1,500.00 |
| 8. Multiple meetings as to the stoppage with Contractor, Orchard Construction, resulting in additional charges from Orchard Construction | $2,000.00 |
| 9. BMJ Survey to combine the legal descriptions | $2,230.00 |

| | |
|---|---|
| 10. Change order to BMJ Survey | $626.70 |
| 11. Electrical service to the barn | $1,512.00 |
| 12. Gas service to the barn | $75.00 |
| 13. Orchard Construction remobilization fees ($700 per X 3) | $2,100.00 |
| 14. Additional fee charged by Orchard Construction for fuel for heaters due to the delayed permits | $209.75 |
| 15. Cost to heat concrete due to the delay in getting permits and therefore having to deal with colder temperature/cold weather | $2,684.00 |
| 16. Unnecessary topographical survey performed by BMJ Survey | $3,750.00 |
| 17. Fee paid to the County as part of the parcel combination | $30.00 |
| 18. Legal Fees including but not limited to the cost of unnecessarily acquiring the adjacent home per the requirement of Roland Suess, the cost of dealing with the efforts of the Township to stop work, prevent DTE services installation, property combination, attending the township meeting, communications with the counsel for the Township and future work to resolve all issues. These costs assume no litigation. | $20,000.00 |
| 19. Fee to the St. Clair County Road Commission for combining parcels | $75.00 |
| 20. Fee paid to the County as part of the parcel combination | $30.00 |
| 21. Fee to the St. Clair County Road Commission for splitting parcels | $75.00 |
| 22. Cost for insurance (a month) | $1,200.00 |
| 23. Cost related to uncapping of taxes | TBD |
| 24. Costs/lost profit based upon being unable to farm for the 2026 growing season $3,000.00/acre for 10 acres (based upon ten (10) acres) | $30,000.00 |
| **TOTAL** | **$75,426.20** |

The above costs were incurred as a direct result of Mr. Suess', Mr. Osterman's, and other Township officials' unlawful interference with our Client's Barn and corresponding properties of which the Barn is located upon or adjacent parcels the parcel that the Barn is located upon. These costs are continuing to accrue.

Additionally, as you may know, our Client was forced to contact law enforcement to report Mr. Suess illegally entering the Barn.

We demand the following from the Township:

1. DTE notified immediately in writing to resume work;
2. Immediately terminate the work order in writing;
3. Reimbursement in full of all of the above costs in full;
4. Written confirmation that Roland Suess will not be permitted to conduct any inspections with respect to the property commonly known as 2233 Bauman and any adjacent parcels owned by Mr. and Mrs. Scott Jackson and/or any entity for which Mr. and Mrs. Jackson are owners;
5. Written confirmation that the Barn will not be the subject of any Township inspections going forward and that the Barn does not require any additional approvals from the Township;
6. Written confirmation that no representative from the Township will enter the Barn when conducting inspections regarding the home our clients intend to construct on the same parcel that contains the Barn;
7. The Township will waive any fees regarding parcel splits for the parcel upon which the Barn is located or any adjacent fees for the twenty-four (24) months immediately proceeding written agreement by my clients and the Township;
8. The Township will review any permit application related to the property upon which the Barn is located within five (5) business days;
9. The Township approves the split of the existing home from the newly combined parcel and agrees to waive any requirements regarding the 1 to 4 ratio (of frontage to depth) split for any resulting parcels that are ten acres or more (consistent with the State of Michigan requirements);
10. Mr. Suess immediately cease and desist from further interference with our Client.

Please provide a written response within seven (7) days from the date of this correspondence confirming that the Township agrees to the above demands including reimbursement for all costs incurred due to the actions of the Township. If I do not receive a satisfactory response, my client has authorized me to file a lawsuit against Columbus Township as well as the individual Township Board Members (Brad Smith, Angie Biringer, Valerie Kelser, Stan Dudek, Jared Greenia) and inspectors including but not limited to Roland Suess and Robert Osterman.

Sincerely,

RICHARD D. LINNELL
Attorney at Law

RDL/jtb

# Exhibit E

**CR No: 260034272**

# ST CLAIR COUNTY SHERIFF'S OFFICE

1170 MICHIGAN ROAD
PORT HURON MI 48060
(810)-987-1700

## Case Report

### Administrative Details:

| | |
|---|---|
| CR No<br>**260034272** | Subject |
| Report Date/Time<br>**08/18/2026 13:08** | Occurrence Date/Time<br>**08/18/2026 13:08** |
| Location<br>[redacted] | Call Source<br>**PHONE** |
| Dispatched Offense<br>**5707 Trespass (Other)** | Verified Offense<br>**C3312 Neighborhood Trouble** |
| County<br>**74 - Saint Clair** | City/Twp/Village<br>**08 - Columbus Twp** |
| Division<br>**Shift C** | |

### Action Requested:

| | |
|---|---|
| [ ] Arrest warrant | [ ] Review only |
| [ ] Search warrant | [ ] Forfeiture |
| [ ] Juvenile petition | [ ] Other |

### People:

**SUESS, ROLAND ROBERT (O-OTHER) (X-MISCELLANEOUS) [TSGROSSJ (9259)]**

| PE: | W.Type: | Last Name | First Name | Middle Name | Suffix | Mr/Mrs/Ms |
|---|---|---|---|---|---|---|
| | | SUESS | ROLAND | ROBERT | | |

| | | | | |
|---|---|---|---|---|
| Aliases | Driver License#<br>[redacted] | [redacted] | [redacted] | [redacted] |

[redacted]

| | |
|---|---|
| Cell Phone | Email |

**JACKSON, SCOTT MICHAEL (O-OTHER)[redacted]) [TSGROSSJ (9259)]**

| PE: | W.Type: | Last Name | First Name | Middle Name | Suffix | Mr/Mrs/Ms |
|---|---|---|---|---|---|---|
| | | JACKSON | SCOTT | MICHAEL | | |

| | | | | |
|---|---|---|---|---|
| Aliases | Driver License#<br>[redacted] | [redacted] | [redacted] | [redacted] |

[redacted]

| |
|---|
| Work Phone |

**CR No: 260034272**

| City | [redacted] | [redacted] | [redacted] | Email |
|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | |

**Narrative:**

**CFS Narrative By: TSGROSSJ (9259)**

Michael called on today's date to report back in May, Roland Suess, the Columbus Twp. Permit manager had trespassed on his property multiple times. Michael was able to provide dates and times; however, the camera footage had been deleted. Roland had trespassed on May 22nd, at 1pm and 7pm and also on May 26th around 8am. Michael stated he did not report this as he did not think it would turn into an issue. When coming onto Michael's property, it is alleged that Roland had to walk past a gate, and approximately 450 feet through Michael's property without permission. Michael needed the report after his lawyer informed him to make a police report. Michael was advised the incident would be documented and to call back with further.

CLOSED

GROSS